Could we call the first case, please, or the only case, Lisa? 16-0657, Citimortgage, Inc. v. Morales Will the attorneys presenting argument please approach, introduce yourself, and spell your last names, please. Good morning. My name is Nazia Hassan, H-A-S-A-N, appearing on behalf of the appellant, Dr. Royce Morales. Good morning. Good morning, Your Honor. This is a record of you, Minetti, M-A-N-E-T-T-I, appearing for Plaintiff Appellee, Citimortgage, Inc. Okay. Well, we typically assign 15 minutes per side. We tend to be flexible up here, so we'll try to make sure you all get your complete arguments in. Ms. Hassan, would you like to reserve some time for rebuttal? I would, Your Honor. Please, five minutes. Okay, sure. That'll be fine. Okay, so thank you, Mr. Minetti. Then take your seat, and Ms. Hassan, whenever you're ready. May it please the Court, Dr. Morales respectfully requests that this Court reverse the dismissal of his motion to quash in 214-01 petition for three reasons. First, service by publication was not proper. The affidavit submitted in support of service by publication do not state any facts and contain false and inconsistent information. Second, Citimortgage did not conduct a due inquiry or diligent inquiry prior to resorting to service by publication. If they had bothered to look for him, Dr. Morales could have been found. Third, justice requires relief for Dr. Morales. Dr. Morales is the victim of fraud and identity theft, and the mortgage foreclosure should be undone, and he should be reinstated with ownership of his property. This Court has heard many mortgage foreclosure cases involving service by publication, motions to quash, and petitions to vacate under Section 2-1401. None of those cases are like the case before this Court today. This case is the result of a fraud. My client, Dr. Morales, did not give a mortgage on his property. He did not owe anyone any money. He did not know anyone was looking for him. He did not know that payments were in default. He is the victim of identity theft. Can I ask you a question, just very briefly? I don't want to get you off track, but there's an indication in the record that there were a couple of bankruptcy petitions filed. Yes. Were those filed while the foreclosure action was pending? They were. They were filed by the perpetrator of the fraud, Cynthia Ivan. Was there a stay entered in those cases? No. Those bankruptcy petitions went nowhere, and they were intended to delay the foreclosure. But when they were filed, didn't the bankruptcy court – isn't there an automatic stay in every case? I believe there is, Your Honor, but it did not apply in that circumstance because Ms. Ivan didn't pursue those bankruptcies. She filed them and didn't pursue them. Filed them with the purpose of delay, it appears from the record. And, again, those bankruptcy petitions were not discovered until Dr. Morales had that stroke in July of 2015, and these matters were uncovered when a credit report – No, but what I'm trying to get at is that normally the bank wouldn't be able to proceed against a debtor, and the circuit court wouldn't be able to proceed while there was a stay in place. But anyway, you continue. I just wanted to ask a question. Those were pending, or they were filed when the action – the foreclosure was going on? Thank you. They were filed while the action was proceeding, but those bankruptcy petitions were dismissed, and so the stay was no longer in effect, and the bankruptcy did not stay the effect of the court's orders. My client purchased this property at 2338 West Taylor in 1994. By 1999, he owned it free and clear of all liens as he had paid off the mortgage on the property. In 2001, he retired and moved to Indiana. He lived in a mobile home, which is a residence, and he lived in Indiana, Plymouth, Indiana. He owned a lot, 0913 in Jellystone National Park Campground, and lived there for at least six months out of the year and, as a typical snowbird, went south for the winter. The plaintiff argues that since your client's affidavit establishes that he did not reside within the state, that by the rule of the statute, he is subject to being served by publication, and that's sufficient. We disagree, Your Honor. That's not correct. That's not a correct reading of the law. A defendant still has the right to be served by the best method of service possible, and an inquiry must be made as to the defendant's whereabouts prior to resorting to service by publication. Although 206 is a disjunctive statute, 7.3, which is a local rule which elaborates on the service requirements of 206, requires a due inquiry in all cases where publication is made to serve a defendant, and a due inquiry must be made to establish, to inquire about a defendant's location and whereabouts in their residence prior to resorting to this least good method of service by publication. Well, they also argue that had they exercised due diligence, reading their petition, that there's no showing that if they would have exercised due diligence, they could have found the defendant in this case. But the problem is they didn't know he lived out of state in 2010. The problem is, in 2010, they didn't have the information because they didn't follow up on the information that they were provided. As the Illinois Supreme Court held in NRA Dar C, it's not diligent to not follow up on information that would allow someone to be found. In that case, the father was not looked for after the normal electronic searches for his location were unsupported. They couldn't find him, but they received other information about his whereabouts during their investigation and did not follow through on those leads. And in this case, as the Duffy Affidavit regarding service attempts made in Florida, Dr. Morales' father told that process over, presumably, although the language of those affidavits are not sufficient under the Deutsche Bank v. Brewer holding. And so, in this particular case, the Duffy Affidavit does not state that Mr. Brown was the one who made these attempts. Can I briefly ask you about those affidavits, then? Yes. So we have one by Carl Brock. You're contesting, among other things, that this particular affidavit doesn't really state that Mr. Brown was the one who made these attempts. Is that right? That's correct. It does not state that. Well, what would a typical affidavit state by a process server? A proper affidavit, Your Honor, should state that I made these service attempts on such and such date, and this is what I found. This affidavit doesn't state that Mr. Brown made those service attempts, and that's based on the ruling in Deutsche Bank v. Brewer. Well, in Brewer, could you describe for me what those affidavits had in them? I've read the case a couple of times. I think that the affidavit in Brewer was identical to this, or something? I think it is identical to this, Your Honor. I did not review the record in Brewer, so I can't comment fully on that. But the affidavit of publication that is at issue in Brewer is almost exactly verbatim the same as the affidavit for publication submitted by Attorney David Olswing in this case. Do you agree that the order allowing service of process by way of a special process server was entered on September 27th, as opposed to any time before that? Or was there a standing order entered in this case? Do you know? I don't, Your Honor. I'm sure there was a standing order allowing service by publication through – I'm sorry, allowing service by special process server. But I thought that the server stated that they were appointed by the court on September 27th, 2010. Whereas there's three service attempts here that were made before the order. But I'll ask counsel for Citibank. But you are challenging the Duffy affidavit, the Brown affidavit, all the other affidavits. But in particular, you're challenging that Brown does not really state that he actually did this, that maybe somebody else did. That's correct, Your Honor. Not only that, it's not just the special process server affidavits that are deficient here. The affidavit for service by publication submitted by the attorney, Attorney Olswing, doesn't state any facts. It states that – I quoted it extensively in the brief a few different times. Is there any question that Dr. Morales never attended any of these proceedings such as the mediation that went on? There is no question that he attended no proceedings. He did not attend any proceedings in this matter. He did not know about this foreclosure matter. Are you privy to the reverse mortgage documents where someone in court suggested to the judge that the matter be mediated? Well, an attorney, there was an order signed, but was there anything in the record regarding this reverse mortgage that someone had applied for for $250,000? There was a second motion for emergency stay of the sale, and again, it's part of the fraud that Cynthia Ivan had committed against her. Is that request for a mortgage, was it applied for like the original mortgage? Cynthia Ivan, attorney of fact? There's nothing in the record to indicate – It was applied for the reverse mortgage. My presumption is Cynthia Ivan did, and it's not an application. Yes, and that's not in the record. There's just an indication that there was a request for a reverse mortgage, and that was one of the reasons to possibly send it to mediation or delay the sale, you said. It's evident from the affidavit submitted, Dr. Morales did not live at that property. A motion for mediation stated that he did live at that property. There's a lot of inconsistencies in the information that was presented by City Mortgage in this case, and presented by Cynthia Ivan in this case, that should have shown the court and should have shown the parties that something was amiss. Well, in light of the fact that the mortgage was applied for by Cynthia Ivan as attorney in fact for Louis Morales, was that an indication that service should have been maybe perhaps initiated to this person, Cynthia Ivan? No, it would not have conferred jurisdiction on my client. No, I'm not saying confer jurisdiction. I'm asking you if this was another indicator that something was amiss when there was no effort to locate this woman who applied for and was given a mortgage by, I don't know, it was assigned to Citibank the day it was granted, wasn't it? It was. It was originated by Tamayo Financial Services and assigned to City Mortgage at the day of closing. And Your Honor is correct in saying that it should have been a tip-off. I'm asking you, should it have been some kind of a red flag? Absolutely. It should have been a red flag. It should have been a red flag that something was wrong in the origination of this mortgage and that something was amiss in this whole matter. Cynthia Ivan used a special power of attorney form, which is not the statutory form, and it's a fabrication. It was a fabricated document in order for her to receive the proceeds of this mortgage that she took out. My client, Dr. Morales, never saw a penny of that $90,000 home equity line of credit. And as I stated before, he had paid off this mortgage, his original purchase mortgage sometime before that. He had entrusted this woman with care of his property, and everything was fine for many years. In 2009, she asked for some particular documentation so she could make repairs to the property. What about the skip trace? It indicated that Louis Morales either resided at the Taylor Street address or the Evergreen Street address in Sebring, Florida. And the servers indicate that they attempted to serve him not only at 2338 West Taylor in Chicago, but they actually made a trip down to Sebring, Florida, spoke to Louis Morales' father, who said he hadn't heard from him in a couple of years, 1704 Evergreen. That's where his vehicle or one of his boats was registered. So didn't they make an effort and didn't all the skip trace information show only those two addresses? That is not clear from the skip trace results. There are other addresses that are shown in that, but the skip trace also shows that no searches were made after October 14, 2010. The service attempt made in Florida was made on October 22, 2010, and there was no follow-up after that. There's an affidavit that states that a resident at the Taylor address said Louis Morales didn't live there. Is there an obligation then to get more information from an apparent resident living at 2338? Yes, there is. But the problem with that is that current resident stated that, but that current resident isn't identified. The special process server in the Brown affidavit doesn't identify that he spoke to a resident. It's unclear how Attorney Olswin came up with that information to include in his publication affidavit, and that is the problem. These publication affidavits don't contain real facts, and they contain false information and inconsistent information across the board. And that is why publication in this case was not warranted, and it should not have been allowed. City mortgage was required to do more to search for Dr. Morales before they just published. And in the affidavit itself, it says to avoid jurisdictional issues, we're resorting to publication. And that's just not good enough. This Court has held that repeatedly, that a defendant is entitled to the best means of service in order to confer jurisdiction. This is putting aside all the issues of the fraud. This is strictly on the issue of service and whether service was proper. It wasn't proper. And the Court erred when it held that the motion to quash in motion and petition to vacate should have been dismissed. But do you agree that Section 2206 should be read in the disjunctive as your opponent wants it read? It is a disjunctive statute by the way it reads. But that's not dispositive. That's not dispositive? The statute says that if somebody resides or has gone out of the State or on due inquiry cannot be found. So the argument, of course, is that the due inquiry does not apply to them being out of State. Are they right? I mean, why are they wrong? Why doesn't the 2206 say what City Mortgage says? They are wrong because there's many cases, there aren't many cases that deal with service by publication on out-of-State defendants, but there are a handful. And in the City of Chicago v. Pittsburgh National Bank case, the Court held that that was not proper service because the defendant was not, when served by publication, the plaintiff had not done enough in order to verify the address in order to serve the defendant. And not only that case, but Anderson v. Anderson, which is a divorce case from 1937 that deals with service by publication on a wife who had abandoned her husband here in Illinois, the Court held that that also was not proper service by publication because you have to do more to find a defendant. You have to conduct a due inquiry and a diligent inquiry before you can just publish on a defendant who resides out-of-State. They're entitled to service. They're entitled to the best means of service. And it's not enough just to say they're out-of-State, we're going to publish. But he was out-of-State. But he was out-of-State. So had they done a sufficiently diligent inquiry? I'm not saying they did in this case. You're saying they didn't. But let's say that they did. Let's say they made a sufficiently diligent inquiry and said, oh, he doesn't live in Illinois. Would that have been good enough? Then they can just serve by publication? No, that's not good enough. They need to identify, they need to conduct the due inquiry and diligent inquiry. And the due inquiry aspect of this case is based on not only 206 and not only the jurisprudence of the State, but also on Cook County Local Rule 7.3, which is an elaboration and requires due inquiry in every instance of service by publication and not just service by publication when somebody lives in Illinois. Any time a mortgage foreclosure involves service by publication. In that City of Pittsburgh case, or not City of Pittsburgh, that Pittsburgh case you referenced, did they interpret 2206 differently than you are arguing it today? Or the same as you? Did that case involve an interpretation of 2206? It did, Your Honor. I don't recall the exact analysis of the case as I stand in front of you right now. But it did involve service by publication under 206. It involved a default order entered against an owner of a property  and the trial court upheld that default and upheld the demolition. And on appeal, they were reversed because they must show more in order and there was false affidavits submitted in that case as well about information. I think in the Pittsburgh case, too, the bank had the address. I'm sorry. Yeah.  The City had the address of the bank. But in their affidavit, they said that they didn't have the last known. They did not, they could not ascertain the last known place of residence of the bank, but they actually had the full address and didn't use the complete address when they served by publication. Thank you. You want to summarize and reserve a little bit of time now, Ms. Hanson? Ms. Hassan? Yes. Thank you. You'll have plenty of time for rebuttal. Don't worry. Thank you. Okay. Thank you. Ms. Ruminetti? May it please the Court. Counsel. Your Honors, I'd like to briefly highlight the procedural posture that brings us here today. Mr. Morales brought a petition to cross-service under Section 214.01, a freestanding petition that invited motion practice. City mortgage brought a motion to dismiss that petition under Section 2615 of the Code. So it was a very narrow rounds of what was ruled on in the Court. We argued that, one, under 615 it should be stricken and dismissed because publication as a matter of law was proper because he established he resided out of State, meeting one of the conditions under publication service. And as a follow-up, two, he did not meet his burden to show that on due inquiry he could be found. And importantly, three, he couldn't, based on the record and the facts before the Court, he could never meet his burden to show that on due inquiry he could be found based on his suggestions. For those reasons, it was stricken under 615. So that's the issue. Mr. Manetti, you weren't actually privy to the proceedings before this motion took course. My law firm, Your Honor? Well, your law firm came in a little bit later, didn't it? My law firm came in at the confirmation of sale, Your Honor. Yes. Okay. Well, at the confirmation of sale, I don't think that anybody was present for the defendant. Were they? There's no indication in the record that someone was, Your Honor, although 90 days possession. What about that lawyer? Was that lawyer there, Mr. Feer? Mr. Feer, yes, was an attorney who filed an appearance on behalf of Louis Morales. You've had a chance to familiarize yourself with this record, haven't you? Certainly, Your Honor. All right. Well, are you suggesting that at some point this Louis Morales was actually in court? Your Honor, the record doesn't reflect that. I'm not suggesting that, Your Honor, the record doesn't reflect that at all.  He was not in court. And again, in limited circumstance of our 615 motion to dismiss their petition, we have to take their facts that they give as true. Okay. So if you take their facts as true, apparently he was not there. Isn't that true? Even if, taking their petition as it is, that he was not actively participating in the case. And again, the circuit court did not resolve that issue. I know they asked in their brief to ask for it to make a finding. If there were any questions of that, whether he had ever been there, if he had never been there, then he had never really been served. For three years, excuse me, Your Honor, because their challenge was to jurisdiction. And as we point out first, he established that one of the conditions for publication service in Illinois, residing out of state, was satisfied. Second, he didn't. You don't get publication service simply because the individual doesn't live in Illinois, do you? Under a plain reading of the statute, Your Honor, as long as... What about the cases that have interpreted the statute over the years? Is there anything in those cases that says you get to publish without any effort if subsequently someone says they're living out of state? The cases don't go as far as not any effort, Your Honor. I'm not trying to make Your Honor make that ruling today. The cases, put more succinctly, once... I'll back up. Under Waller v. Harrison, Your Honors are allowed to take all the affidavits of service and non-service before you and make any reasonable inferences from those cases. In Waller, the court held that although the defendant didn't actually use the language of the statute, he didn't actually say that service would be impractical, the affidavits of non-service and the affidavits of record in the court show that that was a reasonable inference that publication... that, I'm sorry, service was impractical. Your Honor, the court gets to take all the affidavits before it. Okay. Well, let's get down then to the real nitty-gritty here, okay? Yes, Your Honor. Now, in his affidavit, he suggests clearly that Cynthia Ivan not only applied for this mortgage, she was given a mortgage, and when that letter went to the address, the Taylor Street address, she appeared in the court and indicated that she was there on behalf of Louis Morales. In his affidavit, Louis Morales says that the phone number of her husband is the name that was placed on the documents seeking... there was an affidavit applying to appear... As an indigent person, yes. And it's signed by her. Is that right or wrong? The signature that appears on the court documents is by an attorney on behalf of Louis Morales. The language about Cynthia being the attorney in fact for Louis Morales appears on the loan documents. But the... Doesn't her name appear on certain documents in this court file? I don't believe so, Your Honor. I believe the appearance, even though information... certain information is Ivan's, but the signature, the name, I believe, is Louis Morales'. And I'd like to get to Your Honor's point, if I could, about no effort. If there's no effort whatsoever, you can publish. That's not what we're saying here. Just tell me, is it your position that Louis Morales was in court and is part of this whole fraud? Your Honor, there's no indication in the record that he personally was in court outside of the fact that he had appearances signed on his behalf. Again, it's part of their petition that they argued... Well, is it your suggestion that he was... he actually appeared and was served? The record doesn't speak to that, Your Honor, one way or the other. Well, does the record question that then? Are there questions of fact whether he ever appeared in court? Well, Your Honor, the argument behind our petition and why it was granted is because whether or not he personally appeared and submitted himself to the jurisdiction of the court, he was properly served, which is why the judgment against him is valid. You were in court. Did the Louis Morales that showed up and filed the motion to cross, was he the same person that had been appearing for years in the foreclosure act? Your Honor, I didn't appear on this case in the trial court. So you can't even answer that question, can you? Well, no, Your Honor, but my point would be that whether or not he appeared personally and submitted himself to jurisdiction or whether it was someone else acting through a third party unauthorized, he was still validly served via publication of service. Okay. Is it possible to commit a fraud on the court and allow us to affirm this decision if, in fact, this record suggests that someone other than Louis Morales portrayed himself as Louis Morales along with Cynthia Ivan? Is it proper for this court to affirm what appears to be an act of fraud committed upon the foreclosure court? So long as the service of process on Mr. Morales was valid, then, yes, the judgment is valid against him. I would direct Your Honor to the on-site investigation. So long as the service was valid, the fraud doesn't matter. Is that what you're saying? I would direct Your Honor to the J.P. Morgan v. Ontiveros case. A similar situation occurred. A defendant argued that after a judgment was entered against him, he came to the court and said, even though the judgment exists, the mortgage was void. And the court said that they concluded that that argument, absent a jurisdictional challenge, wasn't enough. So for putting aside the jurisdictional challenge, and Mr. Morales is simply asking for the equity of the court based on what he claimed to have in that origination, the Ontiveros case is very on point here, where they said, simply because you have an argument that would make the predestined contract void, doesn't make the judgment void against you if all other things are in place, subject matter jurisdiction and personal jurisdiction. So no, to the extent that he's putting aside the jurisdictional issue, coming in and saying, but there was irregularity, there was fraud at origination, the judgment would be valid. What if he wasn't served? What if he wasn't served? The letter gets to the building. Cynthia Ivan shows up. Who was served? Where is service? If the letter goes to the Taylor Street address, and he's not living there, and Cynthia Ivan shows up in court and then perpetrates an enormous fraud on the court. Now, the question is, forgetting about setting aside a judgment as being void, is there enough in this record for an evidentiary hearing? Should the judge have allowed an evidentiary hearing to clear up what appears to be an absolute fraud committed upon the court by Cynthia Ivan and perhaps her husband? Your Honor, the object of the petition, which they put into play, was the validity of service. And that was the response that our motion to dismiss took. So based on those facts, that the argument on our 615 motion to strike was, one, publication was proper because of the disjunctive nature of 2206. And, two, even if there is a due inquiry component, he didn't meet his burden to show on due inquiry he could have successfully been found. And, three, even in those facts that a due inquiry was made, given those facts and the procedural posture that this case finds the court, no, I don't believe they were entitled to an evidentiary hearing. So is it your opinion that everything rested with him, that you didn't have to show anything? Not anything, Your Honor. Again, if I could simply put it, once a reasonable inference can be drawn, based on the affidavit of service and non-service, that a defendant resides out of state, that's all you need for publication service. You don't have to do nothing. You can't wake up in the morning without any evidence. And that's not the – that is not what we're asking this court to do. Doesn't the affidavit of city mortgage basically say all four things, that we're not sure where he lives, but maybe he lives at the Taylor Street address, or we can't find him because he's concealing himself in the state, or he lives out of state but we don't know what his address is. Isn't that what the affidavit basically says? Yes, Your Honor. And it is clear in case law – Is that consistent with the case law, that throwing everything in the kitchen sink amounts to diligence? Yes, Your Honor. The case law is clear that once the plaintiff puts an affidavit into play, using statutory language, that publication service is valid and it's defendant's burden to show otherwise. There are two instances of this. Most recently in the Cotton case, the court takes it as a given that actually my firm's affidavits, signed by the attorneys, stating in 2206 and 7.3, and again, listing the statutory requirements. What happened in Cotton? In Cotton, they found that there was a sufficient factual dispute as to whether or not there were names on the mailboxes and whether or not there was a large birthday party going on, which again, I think these cases are – It was sent back for a hearing. It was. It was. But I would submit that the facts here are separate. And in the Horton case, you have the court explicitly stating that the attorney who used the usual and customary affidavit sufficiently had the groundwork for publication. And again, under the Waller case, your honors get to look at all the affidavits of service and non-service in front of you. All right. Let's get to your affidavits. Yes. Your opponent has argued that your affidavits are inadequate. Now, what is your response? You don't say it in the brief, so I don't know. What is your response? There are five affidavits, Your Honor. Daniel Wellswing has two affidavits. Let's take the ones for service by the gentleman who said that there was service attempted at the Taylor Street address. Taylor Street. Your Honor, yes. I would begin by noting they don't attack that these service attempts were never made. In fact, it's part of their argument that based on the information we learned during the service attempts, particularly the service attempt in Florida, we should have acted on that information. So they're not directly attacking the affidavits of non-service. They're more attacking some of the reality. Yes, they are. It's in their brief. You don't respond. You say the burden was on Dr. Morales. They are attacking the affidavits as deficient. Now, the question is under Brewer. Under Brewer, Your Honor. Again, here's why the distinction between the due inquiry and the out-of-state residence component of 2206 is so crucial. Brewer was, at its core, a factual attack on the due inquiry component of 2206. Brewer said that he was in his house in Chicago the entire time. The inquiry was 7.3, which 7.3 can't supersede 206. It can't supplant it. Can't supersede? It can't. What do the cases say about 7.3? Are you not obligated under 7.3? Are you saying the circuit court rules are not binding on you? I'm not saying that, Your Honor. What I'm saying is that 7.3 is the specification of what a party needs to show to have due inquiry in Cook County. Again, it can't take precedence over 2206. So when the process server goes out to the house and speaks to an unknown resident, and the resident says that Dr. Morales or Louis Morales doesn't live here, have you done anything? Has the server done anything, any inquiry? Well, there were eight attempts of service at the property, Your Honor, which was in context. When did the court allow service by the special processes? Is it the 27th of September or not? I don't know that fact off the top of my head, Your Honor, although I'd be happy to. Well, isn't that what one of your servers says? Well, Your Honor, the counsel certainly never attacks the appointment of the special process server by a special service. Well, in looking at this case, there's no evidentiary here. There never was any evidentiary here. So my question to you is, doesn't your own server affirm that they were allowed to serve? The special process server was allowed to go out on September the 27th. I would say two things, Your Honor. Even though Your Honor might enjoy a de novo standard of review, it doesn't throw open the issues that are before the court to anything the record could possibly support. In fact, I enjoy that as an appellee. I enjoy that the judgment can be affirmed for any reason the record supports the appellee. Yes, you do. So to speak to your point, I don't know that specific fact off the top of my head. Again, if you want briefing, I can do that. No, we're not doing any more briefing. Your Honor. The question is, do the cases require a check with the neighbors? Is there any requirement that you go and talk to these people? Or once a resident says he doesn't live there, what do you do with that? Nothing or do you inquire? Well, there was a nationwide database search that the process server conducted. What about the resident? Just answer the question about the resident. There were eight attempts of service at the property and no contact was made. Okay, but then there's an affidavit that says a resident said he doesn't live there. I'm asking you about that, not about the eight attempts. We're not even sure now, are we, that three of them actually occurred before the court allowed a special process server to go there. Put that aside. Tell me about the statement in the affidavit that says a resident said he doesn't live there. Your Honor, then it would still, even with that piece in the record, the national search showed the two addresses, Taylor Street and Sebring, Florida. Then my client's process server went to Sebring, Florida, in which they were told with no greater specificity than Mr. Morales is in a motorhome and travels between Indiana and California. What does a resident mean? I'm sorry, Your Honor? What do you think a resident means in this affidavit? Someone who was found at the property, Your Honor, or indicated that they lived there. Well, is that what the word resident means? Doesn't that have something to do with where a person resides? You're saying now resident means somebody that was found at the property? There's no legal connotation to this word? I don't know that the process server or the person found there, to the extent that that's in the affidavit, was using it in a legal context. It's in one of your affidavits that a resident stated he doesn't live there. So I just asked you, is there anything that then suggests we should do more inquiry? They didn't. You're saying no. No, no, no, Your Honor. They did more. They did more. They went to Sebring, Florida, and were told by Dr. Morales' father that he travels between a section of the country encompassing eight states at its most direct path, and that he travels there in a motor home. And so at that point, you go back to the public database search, and no other addresses are apparent, which is confirmed by Morales' own attachments to his petition. And at that point, again, Your Honor, I'll give you this. It might be different if Morales was coming in to court saying, I was at Taylor Street the entire time. That would be a wildly different factual pattern, though. He's agreeing with his own statement. Well, what is wildly different about this? It is not. You have a lot of experience in the area. How many cases have you handled where a woman goes into a bank and says she's the attorney-in-fact for another individual and takes out a $90,000 mortgage? How many cases have you had like this one? Your Honor, it's not unheard of for an attorney-in-fact. Well, I didn't ask you if it's unheard of. I said in your vast experience, how many cases have you handled in the circuit court in here that involved an individual who walked into a bank, said they were the attorney-in-fact for another individual, and got a $90,000 mortgage? I can't put a percentage on it, Your Honor. But have you had any? Honestly. Yes. Oh, yes, yes. How many? Do people take out loans based on? Have they been litigated in the circuit court? I apologize, Your Honor. I can't put a number on it. But you're saying it's not really unusual at all. For someone to walk into a bank with a college degree. You're saying in your own practical legal experience, as an attorney in court, as an officer of the court, you're saying that this is common. No, Your Honor. Again, I can't put a number on it. I can't say common. I can't say greater. It's not greater than 50%. I can tell you that. I don't want to hash out numbers, Your Honor. But that puts you on notice. Citibank, not you. Sure. Does the fact that Cynthia Ivan applied and got a mortgage as an attorney-in-fact for this Louis Morales, did that put Citibank on any notice in this case that maybe you should have been looking for Cynthia Ivan at any time? Cynthia Ivan was never a part of the case, Your Honor. And the simple fact that a mortgage was executed by an attorney-in-fact, no, it wouldn't raise any extra alarm bells. You came in after the mediations, right? Correct. So you don't know what happened, who went to those, do you? Personally, no, Your Honor. If I could get back to the publication service, I do want to mention one thing. I realize it wasn't mentioned in either brief, but I believe that the circumstances as they are in the record, the appellate record at least suggests that Illinois Supreme Court Rule 305K would apply here. It's undisputed that this went to an outbidder. It was deeded to an outbidder, and Morales never moved for and certainly never secured a stay pending appeal. And under Illinois Supreme Court Rule 305K, in the absence of a stay, an appeal is moved if real property, that's the subject of the appeal, is transferred to a third party. So I would submit that this would be the case here, even though Morales is clearly challenging jurisdiction and service on him, because the Horton case elaborates that publication service is voidable, not void, that once an attorney uses an affidavit using the language of the statute, that service is valid and it takes an action. It's the defendant's burden to show otherwise. Are you saying that even if he's right, he loses? To the extent that the record now on appeal shows that a stay was never asked for, it would implicate Illinois Supreme Court Rule 305, which, if that's the case, would be moved. And when would the stay have been requested? It should have been requested either under the rule, within the time to request a notice of appeal, or by extension no later, sorry, no longer than 45 days. You're talking about the litigants to the Section 214.01 should have requested the stay? Yes, the appellants. Okay. Yes. And, again, this clearly went out there, and to the extent that that applies and Mr. Morales can no longer impact the rights of title, can no longer get effectual relief regarding title, it's apparent in the record, and, again, I admit that it's not in anybody's brief, but if it's moved, it can be raised at any time, even by your honors, which is why I felt the need to bring it up today. Attorney, may I? Can you talk about this local county rule? Yes, Your Honor. Your Honor, you were making a comment that it can't supersede state statute. Is that how you – did you read this rule as trying to supersede? Not at all. I just want – it highlights the distinction between a due inquiry publication query, a due inquiry focus, and an out-of-state focus on 2206, which is why the disjunction in the statute is so crucial. Okay. Okay, but I would be willing to agree with you that a local rule could not supplant a state law. It could not contradict a state law, but it could go beyond what a state law does, couldn't it? Yes, it can. Just like the administrative rule could go beyond the statute but cannot overrule the statute. Yes, it can specify and elaborate, and that's what 7.3 does. If there's nothing wrong with 7.3, it specifies and elaborates how you show due inquiry, which, given the disjunctive nature of 2206, is separate than a showing of out-of-state. So it wouldn't come into play under these facts where – I understand the argument, but the language of Rule 7.3 says all affidavits for service must be accompanied by a sworn affidavit making such a, quote, due inquiry. Yes, Your Honor. Which would appear to apply even to a case where it is established that the person you're trying to serve is out-of-state. But it – the very first words of 7.3, Your Honor, are pursuant to 735 ILCS 5-2 slash 206. Right. So it itself takes as its starting point subject to the different components of 2206. I think that's the only fair reading of 7.3, especially given the disjunctive nature of 2206. It's all affidavits. I'm sorry, Your Honor? All affidavits for service of summons by public case. It's subject to 2206. It's – I see where Your Honor is going with that. But, again, to meld the two together would violate – to meld the due inquiry and the out-of-state residence components of 2206. Does any case say that? Is there any case that's interpreted the two together as you're proposing? No, Your Honor. And, again, here's the problem. And speaking of cases, this Ivanov case. Yes. Do you think that – you've taken the paragraph 82 and you've placed it in your brief and said the defendant had the burden of showing he could have been found on due inquiry. Correct. Is that an accurate representation of the rest of the decision? Yes, because I – What does this paragraph mean, then? Okay. Mm-hmm. The first thing they do is Justice Gordon discusses defendant's burden. And he states, although a defendant is not required to file affidavits in order for the trial court to find the plaintiff's affidavits insufficient, defendant in the present case did file affidavits showing that upon due inquiry he could have been found. Indeed, a defendant may challenge a plaintiff's Section 2206 affidavit by filing an affidavit showing that upon due inquiry he could have been found. Yes, Your Honor. So that'll – So how do you mesh the one line you put in your brief with the discussion in the actual body of the decision? Well, the discussion – the bulk of the discussion in Ivanov is about how Ivanov showed on due inquiry he could have been found. So the analysis is actually in lockstep with the rest of the case law across the State saying it's defendant's initial burden. Okay. But the Court said clearly a defendant is not required to file affidavits. In fact, in every single case, doesn't the Court use the language, may, a defendant may file affidavits? Is there any case that says shall or must? I'm unfamiliar with any case stating one way or the other about the necessity of affidavits. But they're unanimous in stating that it is the defendant's burden to make the showing that on due inquiry they could be found. And to that, Your Honor, if I could bring up one last point. The – it was defendant's burden to show that on due inquiry he could be found. And I would note we have an incomplete record here because there's no report of proceedings or bystander's report. So they're up against the additional burden of any reasonable presumption about what happened at that hearing needs to go towards the judgment. But he makes two points. The affidavit in support of the motion, the petition to Quash, it's just – it doesn't show that on due inquiry it can be found. It describes general travel patterns between Indiana and Florida over a decade, that he usually leaves at this point, that he seasonally stays, and the things based on as simple as the weather can impact when he leaves. So his other main point, that if you tried these steps, you would have found me, it's – they're deeply flawed. And if each of these suggestions had been followed, it wouldn't have, even then, wouldn't have resulted in service. So his saying that he could have been found in these steps is immaterial. It's like – it was like the case in Waller where the court said, your supplemental steps that you say we should have taken are immaterial because you don't make a showing that had they been followed, we would have found you. Most emphatically says you should have tried Indiana. After you spoke to Morales' father, you should have tried Indiana. But conspicuously absent from plaintiff's database search, Morales' database search in the petition, and the attachment of the ProVest documents in the response, conspicuously absent is any reference to the state of Indiana of him being found there. The first record reference is on October 22, 2010, based on that affidavit. And the record at this point doesn't indicate that he lives in Indiana, resides there, or owns property there. Just travels between two states on basically opposite ends of the country. Is there any indication in the affidavit from Kenneth Snyder that he actually was the server who went out and tried to serve on these – I'm sorry, Karl Brock. Karl Brock. Your Honor, again, I know – and I know Your Honor disagrees with me, but I think a fair reading of what they're saying is there's no personal – they attack the personal knowledge based on Olswang and Walton. They don't directly attack the non-service affidavits. And again, they take it as a given that those attempts were made because they say, after you did that, you should have done more. So Karl Brock's affidavit – I'm just trying to get to your opinion about Karl Brock. Absolutely, Your Honor.  Where does it say that he actually did any of this? It says in the preamble, in the opening paragraph where he's stating who he works for, he says, I was a process server appointed to serve process in this matter. Right. And he did more? Specifically, Your Honor, no, although I believe that's a reasonable inference. He did this with the Brewer affidavit? No, Your Honor. Again, the circumstances between Brewer and the attack made, the jurisdictional attack made by the defendant, are fundamentally different between Brewer and here. If I could just note, and again, at that point, saying travel between Indiana and California, there's nothing to say at that point why Indiana would be more fruitful than, say, California or any of the other states in between. It would just be a guess. It would be based off of nothing. And to an extent, they attached that Beacon website showing his lot in Plymouth, Indiana. Again, there's nothing in our search or his searches showing that that popped on the public search. It seems to be a website solely limited to Indiana. It seems like you're arguing there's no need for the attorney representing City Mortgage to file an affidavit supporting publication. There's no need for any of the affidavits to contain any substance or based on any personal knowledge because in this case, Dr. Morales said he was living out of state. That's really kind of what you're arguing today. These affidavits have no meaning whatsoever. There's an affidavit that's filed and it doesn't even say who filed it. I think it's probably the former law firm requesting service by publication. There's an illegible name. There's some kind of scribble. There's no name underneath, nothing typewritten. And that was the affidavit requesting service by publication. You're basically arguing there's no need to request service by publication. No, Your Honor. I'm certainly not advocating for that. There are five affidavits on file. Do you have to ask for service by publication in this case? The affidavits need to establish a reasonable inference that publication is appropriate. And so you do have to file an affidavit that meets the requirements of case law and the statute. And that was done here, Your Honor, yes. So this Beacon website, even if the plaintiff had targeted Indiana, again, as opposed to California or any other place in that place of the country, targeted Indiana, found the Beacon website, although there's no supposition to think that they would know it existed, found the Beacon website, and went to the Beacon website, you can only search by individual county. And there are 92 counties in Indiana. So even at that point, even getting that far in Indiana, they still would have faced a search of about 100 possibilities. No case suggests that these efforts are required. And even if they had found the Marshall County and the Plymouth, Indiana plot in Indiana, it still would have led to bad service because chronologically, the first record reference to Indiana is on October 22, 2010. On that date, in Morales' affidavit, he says he was in Kissimmee, Florida. So even if all these things fell into place, they found Indiana, they found the Marshall County, the Beacon, Marshall County, Plymouth, Indiana, and had gone there, he would have already been gone. He would have already been several states away in Kissimmee, Florida. Each of their suggestions would have ended in failure. The daughter, about her information, there's a gap between when she was living in Kissimmee and when that information was publicly available. She attaches in her own credit report, her address wasn't linked to her dad's information until 2003, three years after service and one year after she was living there. And Morales concedes he never lived in California. Apparently that information is simply wrong. So between those three suggestions, Indiana, Florida, and California, none of them would have actually resulted in us finding Morales. So like the Waller case, his suggestions are immaterial. We wouldn't have successfully found him. To the extent that we were required to show due inquiry, we did. We had a national search that popped two addresses, which is confirmed by Melissa Morales' credit report, with the exception of the Kissimmee address that didn't show up until years later. Taylor Street address and Sebring, Florida. Despite multiple attempts at the Chicago address, it ended in failure. And when we went to Sebring, Florida, we were given, the only information was travel between this vast expanse of country, an out-of-state search which invited literally thousands of possibilities looking for Mr. Morales in a motor home. Based on that, service by publication was proper, and he confirmed it in his petition because he was out-of-state. For the foregoing reasons, the judgment of the circuit court should be affirmed, unless your honors have any questions. Thank you very much, counsel. Thank you. I appreciate it. Ms. Hassan? Are you familiar with the Supreme Court rule that counsel mentioned, admittedly not in the briefs but today, regarding mootness? Can you address that at all? Yes, your honor. That Supreme Court rule states that if there's not a stay in effect, then the reversal won't affect the right of any person who's not a party in this action. But that needs to be read in conjunction with 1401E, which states that unless lack of jurisdiction firmly appears on the record proper, which it does here, and it contains that same language. 1401E states that preamble, unless lack of jurisdiction firmly appears from the record proper, and then it goes on to say the vacation or modification of the judgment when there's a third-party purchaser or when the property's been transferred, you can't affect those rights. But 1401E contains that same information. There was no stay applied for. That's true. That was apparent from the time that this appeal was filed, and it was not raised in the briefs. And so, you know, it's a forfeiture of that argument. That's not city mortgages' argument to make. That's a third-party purchaser who is not a party to this appeal. They could have intervened. They did not. Well, you ask for alternative relief, don't you? I do. But the court doesn't find that the record itself demonstrates that jurisdiction is lacking, that the matter at a minimum be sent back for an evidentiary hearing on as motion to quash, which never occurred. Isn't that right? Correct. There was no hearing. There was no evidence presented or testimony presented. It was simply a ruling on the party's briefs on a motion to dismiss, a 615 motion to dismiss, or a 619 motion to dismiss. There was a combined motion. And so, there was no opportunity to be heard as to the matters raised in either the motion to quash or the petition to vacate under 1401. I'd like to address some of the points made regarding attorney fair and submission to jurisdiction or arguments of that nature. Recently, the Illinois Supreme Court decided a case called Stone Street Properties v. City of Chicago, which involved an administrative hearing where there was a default judgment entered. And in that case, somebody had appeared on behalf of the LLC. The Supreme Court held that a defendant does not waive objection to a tribunal's exercise of jurisdiction based on the participation of a person who has not been authorized by the defendant expressly or impliedly to appear on his behalf. And there is no proof of ratification. That is so even if a purported representative is a licensed attorney. When the facts show a lack of authorization, the representative's acts are nullity against the party for whom the appearance was entered. And that's exactly what we have here. So, Mr. Minetti would say, regardless of whether there was fraud going on,  the question presented in the 214-01 is, was service proper? And if it was proper, whether he actually came to court or not, really doesn't speak to the question. Well, our answer is service was not proper. But the 1401 aspects of what is just requires the court to exercise its inherent sense of justice and equity and protect the rights of Dr. Morales. He's the victim of fraud and identity theft here. And this is his asset that he owned for 20-some years. And to have it lost due to this injustice that was done. Weren't there two motions filed? There was a motion to quash and then there was a 1401 petition. There were separate requests made of the court. It was a combined motion. It was a combined. But it included a motion to quash and a petition to vacate the judgment under 1401. Correct. And the court, and then in response, the plaintiff filed a motion to dismiss the combined motion under 269.1. Was that what it was? Yes. A combined motion. And then without any hearing or anything else, the court granted the motion to dismiss the combined motion that was filed, asking to quash service and asking to vacate the judgment under 1401. That's correct, Your Honor. The court ruled on the issue of service by publication being proper only. That's the only ruling that was made. There was no, the court did not address the issues raised in the 1401 petition. It was simply service was proper, case dismissed. Your Honor asked about 7.3 and whether that's an elaboration. And it is an elaboration and requires more even when a defendant resides out of state. The language of the rule is clear. And the cases on 7.3 are clear that it's an elaboration and not a, it's not superfluous. All affidavits for service of summons by publication must be accompanied by that affidavit showing and demonstrating a due inquiry. It's not enough to say, well, now we know he lives out of state. Now in 2015 or 2016 or 2017 when this is coming up, we know he lived out of state. In 2010, all the information was contrary to each other. The information that they're relying on from the service affidavit from Duffy in Florida, again, that affidavit is infirm. It doesn't state facts. And it doesn't contain a clear recitation of what was said, who it was said to. It says Indiana and California. That's the only information that was presented in the affidavit. But it also says that Dr. Miles' father hadn't spoken to him in a year. So how is that reliable information that city mortgage is going to rely upon in order to state that they were diligent or they conducted due inquiry? They can't have it both ways, and that's what is being presented here. There was no diligence and there was no inquiry. There was no due inquiry in order to determine Dr. Miles' whereabouts, and that's why service was not proper in this case. For the reasons stated before this Court, we respectfully request that the trial court's dismissal of the motion to quash and petition to vacate be reversed, and in this Court instruct the trial court to quash service based on the evidence presented, based on the record in its entirety, and vacate all orders because they are void, or in the alternative to remand the case for evidentiary hearing on those issues. Thank you. Thank you, counsel. This is a very difficult case, and we appreciate the very fine briefing and argument from both sides. We'll take the matter on.